[Docket Nos. 22, 35]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

DEPTFORD COMMONS, LLC, *et al.*,

      Plaintiffs,

      v.

TOWNSHIP OF DEPTFORD, *et al.*,

      Defendants.

Civil No. 22-4931 (RMB/EAP)

**OPINION**

**APPEARANCES:**

DeSimone Law Offices, LLC
By: John G. DeSimone, Esq.
22 Euclid Street
Woodbury, New Jersey 08096

    *On behalf of Plaintiffs Deptford Commons, LLC, Malachite Group Ltd., and*
    *Manouchehr Malekan*

Madden & Madden, P.A.
By: Michael V. Madden, Esq.
108 Kings Highway East, Suite 200
Haddonfield, New Jersey 08033

    *On behalf of Defendants Township of Deptford, Deptford Township Combined Zoning*
    *and Planning Board of Adjustment, Paul Medany, Debbie Simone, Dina L. Zawadski,*
    *Christian Romano, Linda Tramo, and Tom Newman, Sr.*

Archer & Greiner, P.C.
By: Peter L. Frattarelli, Esq. and Meghan N. O'Brien, Esq.
1025 Laurel Oak Road
Voorhees, New Jersey 08043

    and

Hill Wallack LLP
By: Gerard H. Hanson, Esq.
21 Roszel Road
Princeton, New Jersey 08543

> *On behalf of Defendants Deptford Fire District, Office of the Fire Marshal, and Francis E. Pote*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motion to Dismiss filed by Defendants Township of Deptford, Deptford Township Combined Zoning and Planning Board of Adjustment, Paul Medany, Debbie Simone, Dina L. Zawadski, Christian Romano, Linda Tramo, and Tom Newman, Sr. (the "**Township Defendants**") and the Motion to Dismiss filed by Defendants Deptford Fire District, Office of the Fire Marshal, and Francis E. Pote (the "**Fire District Defendants**") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1] Plaintiffs Deptford Commons, LLC, Malachite Group Ltd., and Manouchehr Malekan ("**Plaintiffs**") oppose the Motions.[2] No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons expressed below, and because Plaintiffs have failed to sufficiently allege facts that, when taken as true, could establish that any of the Defendants violated Plaintiffs' federal constitutional rights in

---

[1] [Twp. Defs.' Mot. to Dismiss, Docket No. 22; Twp. Defs.' Br. in Support of Mot. to Dismiss, Docket No. 22-3 ("**Twp. Defs.' Br.**"); Fire District Defs.' Mot. to Dismiss, Docket No. 35; Fire District Defs.' Letter Br. in Support of Mot. to Dismiss, Docket No. 35-1 ("**Fire District Defs.' Br.**").]

[2] [Br. in Opp'n to Twp. Defs.' Mot. to Dismiss, Docket No. 31-2 ("**Pls.' Opp'n to Twp. Defs.' Mot.**"); Br. in Opp'n to Fire District Defs.' Mot. to Dismiss, Docket No. 38 ("**Pls.' Opp'n to Fire District Defs.' Mot.**").]

this land use dispute, the Court must dismiss Plaintiffs' federal constitutional claims without prejudice and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Motions will be **GRANTED**, and the Amended Complaint will be **DISMISSED**, **WITHOUT PREJUDICE**, except that Count V will be **DISMISSED**, **WITH PREJUDICE**.

## I.   BACKGROUND

Plaintiffs Deptford Commons, LLC and Malachite Group Ltd. own and manage a commercial property located at 1800 Clements Bridge Road in Deptford, New Jersey (the "**Property**"). [Am. Compl. ¶ 36.] Plaintiff Manouchehr Malekan is the managing member of both entities, and Plaintiffs collectively control seventy-five percent (75%) of the ownership interest in the Property. [*Id.* ¶¶ 2, 5, 6.] The Property itself is a shopping center containing a variety of businesses, including, for example, Ollie's Bargain Outlet. [*Id.* ¶¶ 38, 66.] On April 25, 2022, Plaintiffs entered into an agreement to lease part of the Property to Buy-Rite Builders Surplus, LLC ("**Buy-Rite**"), a "discount home improvement supply clearing house selling its product to the retail purchaser." [*Id.* ¶¶ 36, 40.] The leased space is zoned "B-2"—in other words, permitting the lessee to sell retail merchandise. [*Id.* ¶ 38.] The prior tenant was a PetSmart store. [*Id.* ¶ 40.] On May 23, 2022, Buy-Rite, as the prospective tenant, applied to Deptford Township for a conditional use permit to occupy the leased space. [*Id.* ¶ 40.] Buy-Rite's application, however, was denied on May 26, 2022. [*Id.* ¶ 52.]

Denying Buy-Rite's application on the Township's behalf, Debbie Simone, a zoning officer and technical assistant, and Paul Medany, Mayor of Deptford Township, apparently made a series of oral statements explaining their rationale. [*Id.* ¶¶ 10, 13, 42.] They did not issue a written decision. [*Id.* ¶ 41.] Mayor Medany allegedly stated that the Property was a "blight" on the Township and that until it is "cleaned up," the Township "would not approve any new tenant to occupy the Property." [*Id.* ¶¶ 45, 46–47.] Ms. Simone stated simply that Buy-Rite's application would not be approved "at their discretion." [*Id.* ¶ 43.] After its application was denied, Buy-Rite chose not to appeal before the Deptford Combined Zoning and Planning Board of Adjustments and leased space elsewhere. [*Id.* ¶ 57.]

As illustrated by the allegations in the Amended Complaint, Plaintiffs and the Township have a strained relationship. Recently, for instance, the Township issued a $405,000.00 fine to Plaintiffs for violating various ordinances and permitting the Property to fall into disrepair. [*Id.* ¶¶ 48–50, 61.] The fine has been the subject of ongoing litigation between the parties in municipal and state courts. [*Id.*] Additionally, Buy-Rite's denial is not the first time one of Plaintiffs' prospective tenants was rejected by the Township. Plaintiffs generally refer to disputes regarding ordinance violations and the Township's denial of certificates of occupancy, use variances, and permit applications related to the Property. [*Id.* ¶¶ 58–59.] At bottom, Plaintiffs suggest that the denial of Buy-Rite's application is part of a pattern of unequal treatment of Plaintiffs due to Defendants' "ongoing vendetta" against, and "personal disdain" for, Mr. Malekan. [*Id.* ¶¶ 60, 68; *see also id.* ¶¶ 67, 69–72.]

4

Furthermore, Plaintiffs assert that Defendants' conduct is motivated, at least in part, by anti-Semitism. [*Id.* ¶ 77.] Plaintiffs base this accusation principally on a Notice of Imminent Hazard and Order to Take Corrective Action (the "**Hazard Notice**") that the Fire District Defendants served on September 26, 2022 during Rosh Hashanah, the Jewish New Year. [*Id.* ¶¶ 77–81.] The Hazard Notice identified five (5) fire safety violations at the Property, directed Plaintiffs to close access to the Property by September 28, 2022 so some of its fire hydrants could be replaced, and required abatement of the violations by the same date. [*Id.* ¶ 81; *see also* Docket No. 14-1, Exs. A, E.] Mr. Malekan, who is a Jew of Iranian descent, alleges that the timing of the Hazard Notice illustrates anti-Semitism on the part of Mayor Medany, other unspecified representatives of the Township, and the Fire District Defendants. [Am. Compl. ¶¶ 2, 5, 77.] He also contends that the Hazard Notice was an unnecessary disruption to Rosh Hashanah because the replacement work had already been scheduled. [*Id.* ¶¶ 75, 77–78, 80.]

As further background, in August 2022, Plaintiffs had discovered water leaks at the Property resulting from the deterioration of underground pipes. [*Id.* ¶ 74.] Plaintiffs had been working with the Deptford Township Municipal Utilities Authority, the Fire District, and a contractor to repair and replace the leaking valves, which required the Property to be closed intermittently during the evening. [*Id.* ¶¶ 74–76.] Additional work was scheduled to be performed on September 28, 2022. [*Id.* ¶ 80.] Plaintiffs apparently appealed the issuance of the Hazard Notice on September

27, 2022 before the Construction Board of Appeals for the County of Gloucester, [*id.* ¶ 87], which resulted in additional litigation in state court, [*see id.* ¶¶ 92–98].

Before the appeal was heard, however, Fire Marshal Pote directed tenants at the Property to vacate the premises by 9:00 a.m. on September 28, 2022, or they would be arrested. [*Id.* ¶ 88.] Fire Marshal Pote, or another representative of the Fire District, apparently communicated false information to some tenants that Plaintiffs had failed to pay their water bills, so the Property would be closed for months. [*Id.* ¶ 89.] Shortly after this time, anti-Semitic statements and images were found at the Property, including a construction cone bearing a swastika. [*Id.* ¶ 96.[3]]

Plaintiffs initiated this litigation on August 5, 2022. [Compl., Docket No. 1.] On December 5, 2022, Plaintiffs filed the Amended Complaint. [Am. Compl., Docket No. 14.] Based on the foregoing facts, Plaintiffs assert that the Township Defendants and the Fire District Defendants violated their rights under the Constitution and laws of the United States and the State of New Jersey. [*Id.* ¶ 102.] Specifically, Plaintiffs assert that Defendants' conduct constitutes an unlawful takings of the Property without just compensation (Count I),[4] "malicious infliction of extreme mental

---

[3] Plaintiffs also claim that graffiti, the word "schwantz," and an image of male genitalia were all painted along the front of the Property. [Pls.' Opp'n to Twp. Defs.' Mot. 19.] None of these allegations appears in the Amended Complaint.

[4] Although Count I is styled as a federal takings claim, Plaintiffs also reference the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution among their allegations, [Am. Compl. ¶¶ 104–08], so the Court understands Count I to represent Plaintiffs' federal claims generally. Count VI, by contrast, only references the New Jersey Constitution and Civil Rights Act.

anguish" (Count II), negligence (Count III), a violation of Plaintiffs' substantive and procedural due process rights, and equal protection (Counts I and VI), tortious interference with contract (Count VIII), and an "illegal eviction by third party" (Count IX). [*Id.* ¶¶ 104–14, 119–27, 130–40.] Plaintiffs also seek affirmative injunctive relief against Defendants—namely, to issue a conditional use permit to Buy-Rite "unless they have a legitimate legal reason for withholding it" (Count IV)—and the appointment of a special master "to control the wanton reckless actions and fines imposed by the municipality against the Plaintiffs" (Count V). [*Id.* ¶¶ 115–18.] Plaintiffs bring this action pursuant to 28 U.S.C. §§ 1331 and 1343 and "the rules of pendent jurisdiction," which the Court construes to mean 28 U.S.C. § 1367. [*Id.* ¶ 32.] Plaintiffs assert their claims pursuant to 42 U.S.C. §§ 1983 and 1988. [*Id.*]

On January 18, 2023, the Township Defendants filed their Motion to Dismiss, [Docket No. 22], and on February 24, 2023, the Fire District Defendants filed their Motion to Dismiss, [Docket No. 35]. They both seek to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs lack standing to bring this action, that Plaintiffs have failed to state a claim upon which relief could be granted, and that a variety of other substantive and procedural reasons bar Plaintiffs' claims. [*See generally* Twp. Defs.' Br.; Fire District Defs.' Br.] Plaintiffs filed their respective Oppositions on February 17 and March 3, 2023. [Docket Nos. 31, 38.] As the Motions are fully briefed, they are ripe for adjudication.

## II.   LEGAL STANDARDS

A pleading is generally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To comply with this rule requiring a plaintiff to provide the "grounds" of his entitlement to relief, the plaintiff must allege more than mere labels and conclusions or a "formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) (citations omitted).  The motion should be granted if the court cannot grant the relief requested under any set of facts that could be proved.  *Id.* at 351 (citation omitted).  A court need not accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (observing

that a court need not credit any "bald assertions" or "legal conclusions") (citation omitted). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (hereinafter, "*In re Schering Plough Corp.*"). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citation omitted). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (cleaned up) (citation omitted). The burden of establishing the court's jurisdiction is on the party asserting its existence. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

## III.   DISCUSSION

The Township Defendants seek to dismiss this action for several independent reasons. First, they contend that this Court lacks jurisdiction over Plaintiffs' claims

because Plaintiffs cannot establish standing and, at the very least, Plaintiff's claim for injunctive relief (Count IV) is moot. [Twp. Defs.' Br. 15–18.] Next, the Township Defendants argue that Plaintiffs' claims must be dismissed because Plaintiffs have failed to file a complaint in lieu of prerogative writs in state court pursuant to N.J. Ct. R. 4:69, have failed to explain how relief from this rule is warranted, and otherwise have not exhausted their administrative remedies. [*Id.* at 19–26, 38–39.] Additionally, the Township Defendants argue that Plaintiffs have failed to state a claim under the Takings Clause of the Fifth Amendment as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. [*See id.* at 26–38.] Finally, the Township Defendants argue that Plaintiffs' other claims must be dismissed because they lack a legitimate basis in law. [*Id.* at 38.]

The Fire District Defendants seek to dismiss Plaintiffs' claims, in large part, for the same reasons as the Township Defendants.[5] [Fire District Defs.' Br. 1, 3–7.] They further explain that Plaintiffs' claims fail to differentiate between them and the Township Defendants. [*Id.* at 3.] Therefore, the Fire District Defendants seek the dismissal of any claim asserted against them based on the denial of Buy-Rite's application, as the Fire District Defendants have no authority in this regard. [*Id.*]

After carefully reviewing the parties' submissions, the Court concludes that only some of the foregoing arguments merit discussion here. The Court focuses its written analysis on Defendants' preliminary argument that Plaintiffs lack standing to

---

[5] As such, the Court only cites to the Fire District Defendants' Brief when necessary, otherwise citing the Township Defendants' Brief.

adjudicate the denial of Buy-Rite's use permit application and Defendants' contention that Plaintiffs' federal constitutional claims must be dismissed pursuant to Rule 12(b)(6).  In this regard, the Court exercises subject matter jurisdiction over such claims pursuant to 28 U.S.C. § 1331 because they arise under the Constitution and laws of the United States.

### A.  Rule 12(b)(1)—Standing.

The Court first addresses Defendants' argument that Plaintiffs lack standing to bring this action.  [Twp. Defs.' Br. 15–17.]  Defendants contend that Plaintiffs lack standing because their claims are all based on the denial of a non-party's application for a use permit.  [Twp. Defs.' Br. 15.]  Because a use permit is personal to the applicant and Buy-Rite is not involved in this dispute, Defendants argue that Plaintiffs have no standing to challenge the Township's denial of Buy-Rite's application here.  [*Id.* at 16–17.]  Relatedly, Defendants argue that Plaintiffs' demand for injunctive relief to issue a use permit "unless they have a legitimate reason for withholding it" (Count IV) is at least moot, as Buy-Rite did not appeal the denial of its application and has indicated an intention to operate outside the State of New Jersey.  [*Id.* at 17–18.]

Article III of the Constitution limits the scope of the federal judicial power to resolving actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *In re Schering Plough Corp.*, 678 F.3d at 244 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (cleaned up).  To police this constitutional limitation, courts

11

have developed several justiciability doctrines.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The justiciability doctrine of standing refers to the requirement that a litigant must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers."  *In re Schering Plough Corp.*, 678 F.3d at 244 (citing *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)) (cleaned up).

Specifically, standing requires the plaintiff to prove three elements:

> *First*, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations, alterations, and citations omitted) (emphases added).  Importantly, standing must be established as to each claim asserted.  *Cuno*, 547 U.S. at 352 (citations omitted).

Defendants do not engage with the above standard.  Rather, in support of the proposition that a landowner does not have standing to challenge the denial of its lessee's application for a use permit, the Township Defendants cite *Campus Assocs. L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Hillsborough*, 996 A.2d 1054 (N.J. Super. Ct. App. Div. 2010).  [Twp. Defs.' Br. 15.]  Relying on that court's discussion of New Jersey's standing requirements for state-court litigants in a land use dispute, the Township Defendants appear to suggest that Plaintiffs have not suffered an injury-in-

12

fact because Buy-Rite's use permit "would not run with the land such that [Plaintiffs] or successive owners would benefit" from it.  [*See id.* at 17.]  Thus, Plaintiffs have not been directly injured by the application denial.  Defendants imply that this lack of injury bars each of Plaintiffs' claims.  [*See id.* at 15.]

In *Campus Assocs.*, a landowner entered into a contract with a developer to construct affordable housing units on its property, and the developer was tasked with the responsibility of obtaining the necessary development approvals from Hillsborough Township—*i.e.*, a use variance.  996 A.2d at 1055–56.  The developer's application was denied.  *Id.* at 1056.  After choosing not to appeal, the developer terminated its contract with the landowner.  *Id.*  The landowner filed a complaint in lieu of prerogative writs in state court to challenge the denial of the developer's application but was dismissed for lack of standing.  *Id.*

Reversing the judgment below, the appellate court explained that "a variance is not a personal right granted by a board to an applicant"; it is a right that "attaches to the land" and affects successive property owners.  *Id.* at 1058.  Thus, when the zoning board denied the use variance application, it deprived the landowner of a distinct benefit adverse to the landowner's interests, notwithstanding the developer's decision to forego its right to appeal.  *Id.*  The variance would have benefited the landowner by expanding the uses of its property.  *Id.*  Accordingly, the landowner had a sufficient stake in the litigation to appeal the denial of the developer's application.  *Id.*

13

Reaching this conclusion, the *Campus Assocs.* court distinguished *Spinnaker Condominium Corp. v. Zoning Bd. of Sea Isle City*, 813 A.2d 1282 (N.J. Super. Ct. App Div. 2003) where the court refused to accord standing to a landowner who appealed the denial of a use variance application sought by its lessee because the variance in that case "would not have run with the land in the traditional zoning sense." *Campus Assocs.*, 996 A.2d at 1058, 1059–60.  In *Spinnaker*, the use variance permitted the construction and attachment of nine communications antennae to the landowner's rooftop and depended upon factual circumstances unique to the applicant-lessee. *Spinnaker*, 813 A.2d at 1287.  Unlike the applicant in *Spinnaker*, the developer in *Campus Assocs.* "was making a traditional land use application dependent upon property specific proofs." *Campus Assocs.*, 996 A.2d at 1060.  Therefore, the landowner had standing to oppose the denial of the developer's application. *Id.*

Here, Plaintiffs strongly oppose Defendants' argument that they lack standing. First, Plaintiffs claim that they have suffered an injury-in-fact because the denial of Buy-Rite's application resulted in lost rental income that was reasonably expected after they leased a portion of the Property to Buy-Rite.  [Pls.' Opp'n to Twp. Defs.' Mot. 9.] Second, Plaintiffs argue that there is a sufficient causal connection between the Township's denial of Buy-Rite's application and their lost rental income.  [*Id.*] Additionally, in support of both points, Plaintiffs explain that their injury is broader than the lost rental income associated with Buy-Rite's lease; Plaintiffs explain that the Township's "continued attempts to block all efforts by Plaintiffs to lease their Property to be economically viable" has caused Plaintiffs to lose some $32,037,238.00, as

14

evidenced apparently by an economic loss expert they have engaged.  [*Id.* at 10.]
Third, Plaintiffs do not discuss redressability.  [*See id.* at 9–10.]

The Court is unpersuaded by both parties.  On the one hand, Defendants misdirect the Court's attention by focusing on *Campus Assocs.* and *Spinnaker*.  True, these cases appear to support the proposition that a landowner does not ordinarily have standing to challenge the denial of a land use application by a third-party lessee— there must be some direct implication for the landowner that demonstrates a sufficiently personal stake in the land use decision to warrant standing.  *See Campus Assocs.*, 996 A.2d at 1058 (explaining that a variance application denial accords such a stake because it "is not a personal right granted by a board to an applicant" but a right that "attaches to the land" and affects successive property owners).  But these cases address New Jersey's standing requirements for state-court litigants in land use disputes of the typical variety—in other words where the litigant disputes the basis for an adverse zoning decision or seeks to demonstrate that a zoning board abused its discretion.  The proposition for which they are cited here is not necessarily dispositive of Plaintiffs' Amended Complaint because, lurking among Plaintiffs' allegations, there are partially developed claims of purposeful discrimination, unequal treatment, and other bad-faith conduct by Defendants in violation of the laws and Constitution of the United States.  Thus, the Township Defendants' reliance on *Campus Assocs.* is misplaced, at least at this stage of the litigation.

Ignoring application of the relevant standard, Defendants fail to explain how Plaintiffs lack Article III standing as to each of the claims that are asserted here.  *See*

15

*Allen v. Wright*, 468 U.S. 737, 751–52 (1984) (discussing the general requirements for standing).   In doing so, they overlook Plaintiffs' partially developed allegations describing the Township's denial of other, unspecified prospective tenants, [*see, e.g.*, Am. Compl. ¶ 42], noting Mayor Medany's apparent intention to prevent any tenant from receiving a use permit until the Property is "cleaned up," [*see, e.g.*, *id.* ¶ 45], recounting, in a general manner, the imposition of fines and a history of litigation in municipal and state courts, [*see, e.g.*, *id.* ¶¶ 48, 58, 59], and accusing Defendants of anti-Semitism, [*see, e.g.*, *id.* ¶ 77].   These allegations, among others, are directed at Plaintiffs' contention that Defendants have deprived them of their federal constitutional rights by attempting to "put these Plaintiffs out of business" based on certain Defendants' "personal disdain" for Mr. Malekan.   [*Id.* ¶ 60.]   Though the Court determines that additional detail is required for these allegations and accusations to substantiate federal constitutional violations, see *infra* Section III.B, Defendants fail to view Plaintiffs' claims in the correct light.   Thus, by focusing too narrowly on the denial of Buy-Rite's application, Defendants' standing argument—which seeks to preclude *all* of Plaintiffs' claims—sweeps too broadly.

On the other hand, Plaintiffs fail to meet their burden of establishing Article III standing.   *See In re Schering Plough Corp.*, 678 F.3d at 244 (explaining that standing is a plaintiff's burden).   First, Plaintiffs "must demonstrate standing for each claim he seeks to press." *Cuno*, 547 U.S. at 352 (citation omitted).   By arguing that they have standing in this action because the Township denied Buy-Rite's application and now continues to "block all efforts by Plaintiffs to lease their Property to be economically viable,"

16

[Pls.' Opp'n to Twp. Defs.' Mot. 9–10], Plaintiffs place the cart before the horse, as it were. They fail to connect Defendants' allegedly injurious conduct to the claims asserted. By failing to proceed claim-by-claim, Plaintiffs have not established their entitlement to "an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752. Second, it is Plaintiffs' burden to show an injury in fact, causation, *and* redressability. *See Lujan*, 504 U.S. at 560–61. Omitting discussion of the third requirement, Plaintiffs have failed to satisfy this Court that it could remedy the injuries of which Plaintiffs complain.

Therefore, the Court concludes that Plaintiffs have not established standing at this juncture as to each of the federal constitutional claims they assert. *See Lujan*, 504 U.S. at 560–61. For this reason, Plaintiffs' federal claims must be dismissed, without prejudice, pursuant to Rule 12(b)(1).[6] *See Ballentine*, 486 F.3d at 814 (dismissing claim where plaintiff failed to satisfy court of the elements of standing).

---

[6] The Court also determines that Plaintiffs' request for affirmative injunctive relief (Count IV) must be dismissed without prejudice because Plaintiffs have not satisfied the Court that a favorable decision on the merits of their federal claims would likely redress the lost income associated with their inability to successfully install a tenant at the Property. *See Lujan*, 504 U.S. at 561 (explaining that standing requires that it must be "likely" that the complained-of injury will be "redressed by a favorable decision") (citation and internal quotation marks omitted). In other words, Plaintiffs have not adequately explained that the issuance of a use permit to Buy-Rite would likely remedy their injury. Buy-Rite chose not to appeal the denial of its application through the ordinary procedure, is not a party in this litigation, and has evidently leased space elsewhere. Whether Plaintiffs' request is "moot," as Defendants argue, or simply inadequately established, the Court will not order such relief without a sufficient explanation from Plaintiffs that doing so would make a difference.

### B.     Rule 12(b)(6)—Plaintiffs' Federal Constitutional Claims.

Next, even though the Court concludes that Plaintiffs' have not established standing as to each of the claims they assert, the Court nonetheless addresses the Township Defendants' argument that Plaintiffs' federal constitutional claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  [Twp. Defs.' Br. 26–38.]  As noted, Plaintiffs allege that they were denied substantive and procedural due process and equal protection of law in violation of the Fourteenth Amendment of the Constitution when the Township Defendants denied Buy-Rite's use permit application and other prospective tenants' applications.  [Am. Compl. ¶¶ 104–108.]  They also claim that such conduct represents a takings without just compensation.  [*Id.*]  These claims appear to provide the sole basis for this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court first turns to Plaintiffs' "takings" claim before discussing the remainder of the federal constitutional claims in turn.

### 1.     Takings Claim.

First, the Court addresses whether Plaintiffs' Amended Complaint states a claim for a "taking."  The Takings Clause of the Fifth Amendment of the Constitution states that "private property [shall not] be taken for public use without just compensation."  U.S. CONST. amend V.  The Takings Clause applies to state and local governments through the Fourteenth Amendment.  *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (citation omitted).  To prove that a violation of the Takings Clause has occurred, courts typically engage in a two-step inquiry whereby they must (1) identify that the plaintiff has asserted a "legally cognizable property interest" and (2) ask (a)

"was there a taking?"; (b) "was the taking for public use?"; and (c) "did the claimant receive just compensation?" *Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 266 (D.N.J. 2021) (McNulty, J.) (quoting *Park Restoration, LLC v. Erie Ins. Exch.*, 855 F.3d 519, 526 (3d Cir. 2017)), *aff'd*, 45 F.4th 662 (3d Cir. 2022).  Takings claims involve either "direct government appropriation or physical invasion of private property," or government regulation that is so onerous that it effectively accomplishes a "direct appropriation or ouster." *Id.* (quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005)).  The latter variety is referred to as a "regulatory taking."

There are two ways to prove a regulatory taking.  The first is a *per se* regulatory taking, where the landowner must show that the government regulation denied "all economically beneficial uses in the name of the common good, that is, to leave his property economically idle." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). The second is to show that a takings occurred, in the absence of a 'complete deprivation of economically beneficial use,' by addressing the *Penn Central* factors, which include: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action." *Murr*, 582 U.S. at 393; *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

A landowner may assert a claim under the Takings Clause in federal court pursuant to 42 U.S.C. § 1983 as soon as a government actor takes the landowner's property without paying for it. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019).

19

The landowner need not litigate his takings claim in state court or first pursue post-takings remedies that may be available by the state.  *Id.*

Here, Plaintiffs' takings claim fails at step one.  Plaintiffs have not identified a "legally cognizable property interest" at the core of their claim, nor can the Court clearly detect one from the allegations in the Amended Complaint or Plaintiff's Opposition Briefs.  [See Am. Compl. ¶¶ 104–08.]  In one breath, Plaintiffs appear to base their property interest on the Township's denial of Buy-Rite's use permit application.  [*See id.* ¶ 107.]  Placing to the side that Plaintiffs' presumed property interest relates to a third-party application—which undermines their takings claim from the start—the Court cannot discern how the denial of a single use permit implicates a cognizable property interest.  Plaintiffs do not have a *property* right to install their prospective tenant at the Property and operate their business enterprise in the way they prefer.  *See Nekrilov*, 528 F. Supp. 3d at 267 (explaining that city ordinance that prohibited short-term rentals was not cognizable under the Takings Clause because business-owners had no forward-looking right to pursue short-term rental business in city) (collecting cases); *see also Savage v. Mills*, 478 F. Supp. 3d 16, 31 (D. Me. 2020) ("Takings jurisprudence is directed at government conduct that denies beneficial use of *property*, meaning things like legal interests in real or personal property, not the liberty interest to engage in business activity.").  Therefore, because Plaintiffs have not adequately explained how the Township's failure to issue a use permit to a third-party lessee involves Plaintiffs' property right, their takings claim is not cognizable.

In another breath, Plaintiffs suggest that a takings has occurred because the Township Defendants have rejected, and will continue to reject, "all prospective tenants"—thereby implicating "their right to legally occupy the space the applicant seeks." [Am. Compl. ¶ 105; *see also id.* ¶¶ 45, 47.] The Court understands Plaintiffs' allegation to be that the Township's bad-faith consideration of their lessees' permit applications has, in effect, destroyed the economic value of the Property because they are unable to generate any rental revenues. [See Pls. Opp'n to Twp. Defs.' Mot. 27 (asserting low vacancy rate and damages of $32 million resulting from Township Defendants' conduct).]

But Plaintiffs' allegations are woefully deficient for this Court to permit a takings claim to proceed on this basis. Plaintiffs have provided few facts regarding the other prospective tenants that the Township has allegedly rejected, and by focusing exclusively on their rental business, they fail to address the economic impact on the Property itself and any alternative uses thereof. In other words, Plaintiffs have not sufficiently alleged that Defendants have caused a "complete deprivation of beneficial use" of the Property, that it is "economically idle." *See Lucas*, 505 U.S. at 1019. Moreover, Plaintiffs do not explain how the Township's basis for rejecting their prospective tenants—the apparent disrepair of the Property and its interest in seeing the Property "cleaned up"—was illegitimate. These deficiencies preclude Plaintiffs' takings claim. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985) ("A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property *in any sense* . . . Only when a

permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred.") (emphasis added); *see also Tulio v. Lansdale Borough*, ___ F. Supp. 3d ___, ___, 2023 WL 2432479, at *9 (E.D. Pa. Mar. 9, 2023) (explaining that legitimate government action to provide utility service for a fee and to disconnect service for failure to pay did not "substantially interfere with [plaintiff's] property rights").  Therefore, without sufficiently detailed allegations, Plaintiffs have failed to establish a takings based on the Township's denial of their prospective tenants' use permit applications "until the Property [is] in better condition and cleaned up."  [Am. Compl. ¶ 45.]

Finally, the Court must note that Plaintiffs' arguments miss the mark.  For instance, they claim that the Township Defendants accomplished a "physical invasion" of the Property when Plaintiffs and their tenants were shut out for emergency repairs following the issuance of the Hazard Notice by the Fire District Defendants.  [Pls.' Opp'n to Twp. Defs.' Br. 28; Am. Compl. ¶¶ 88–89.]  This temporary action of questionable burden is categorically not a "direct government appropriation" of private property for public benefit of the kind remediable by the Takings Clause.  *See, e.g.*, *United States v. Pewee Coal Co.*, 341 U.S. 114, 115–16 (1951) (explaining that the government's seizure and operation of a coal mine to prevent a national strike was a takings requiring just compensation).  Moreover, Plaintiffs fail to establish how the Township Defendants can be liable for a purported takings where the claim is premised on the conduct of the Fire District Defendants.  This deficiency strongly undermines Plaintiffs' claim.

Therefore, because Plaintiffs have not set forth sufficient facts to establish that Defendants' conduct implicates a cognizable property interest, Plaintiffs cannot prevail on their claim under the Takings Clause.  *See In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017) (explaining that a takings claim must be based on a legally cognizable property interest as a threshold matter).  Accordingly, the Court will grant the pending Motions, *see Evancho*, 423 F.3d at 351 (explaining that Rule 12(b)(6) motion should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved") (internal quotation marks and citation omitted), and dismiss this claim without prejudice.

### 2.    Substantive Due Process Claim.

Second, the Court addresses whether the Amended Complaint states a violation of Plaintiffs' substantive due process rights.  A zoning official's conduct violates the substantive component of the Due Process Clause of the Fourteenth Amendment when it "shocks the conscience."  *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399–400 (3d Cir. 2003).  What constitutes conduct that shocks the conscience "varies depending on the factual context," *id.* at 400, but "only the most egregious official conduct" can be characterized as "arbitrary, or conscience shocking, in a constitutional sense," *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 847 (1998) (internal quotation marks and citation omitted).  Because "[l]and-use decisions are matters of local concern," courts must take care to ensure that land-use disputes are not "transformed into substantive due process claims based only on

allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402. "What is clear is that [the shocks-the-conscience] test is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004).

In *Eichenlaub*, the Third Circuit considered a substantive due process challenge to a zoning official's actions. 385 F.3d at 286. Finding that the misconduct alleged did not rise to the level required to pass the "shocks the conscience test," the court explained as follows:

> Basically, the Eichenlaubs assert that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs. . . . [T]hese complaints are examples of the kind of disagreement that is frequent in planning disputes.

*Id.* The *Eichenlaub* court suggested that "egregious official conduct" might be demonstrated by well-pleaded allegations of corruption or self-dealing, efforts to "hamper development in order to interfere with otherwise constitutionally protected activity at the project site," bias against an ethnic group, or a virtual "taking." *See id.*

Still, the "shocks the conscience test" is not easily met in land-use disputes appearing in federal courts. *See, e.g.*, *Skiles v. City of Reading*, 449 F. App'x 153, 158 (3d Cir. 2011) (affirming dismissal of substantive due process claim asserted by owner of nightclub catering to gay patrons where city defendants closed business for zoning and health code violations, even though city inspector had used slur for gay people in describing nightclub owner); *Nekrilov*, 528 F. Supp. 3d at 282 (rejecting substantive due

process challenge to short-term-rental ban where city officials plainly had legitimate basis for ordinance—increasing the long-term housing supply and reducing public nuisances); *Shamrock Creek, LLC v. Borough of Paramus*, 2014 WL 4824353, at *5 (D.N.J. Sept. 24, 2014) (dismissing substantive due process claim against municipal officials who allegedly sought to prevent landowner from developing former city dump where allegations of selective enforcement, police harassment, and defamation, among others, were inadequately supported). Notably, allegations of a zoning official's bad-faith violation of state law will not state a substantive due process claim. *See, e.g.*, *Highway Materials, Inv. v. Whitemarsh Twp.*, 386 F. App'x 251, 258 (3d Cir. 2010) (explaining that defendants' actions—refusal to cooperate with landowner, improper application of township ordinances, differential treatment, and active effort to deny landowner the opportunity to develop its land—may violate state law but "simply do not shock the conscience").

Here, having reviewed Plaintiffs' Oppositions, the Court understands the following alleged facts to form the basis for Plaintiffs' substantive due process claim: the Fire District Defendants issued the Hazard Notice during Rosh Hashanah, [Am. Compl. ¶¶ 77–81]; threatening arrest and apparently spreading false information about Plaintiffs, the Fire District Defendants directed Plaintiffs' tenants to vacate the Property while they replaced fire hydrants on site, [*id.* ¶¶ 88–89]; and graffiti and anti-Semitic statements and images were found at the Property in October 2022, [*id.* ¶ 96]. However, even assuming the truth of these alleged "facts"—some of which are deeply troubling, to say the least—the Court cannot determine how they establish a violation

25

of the substantive component of the Due Process Clause of the Fourteenth Amendment.    Plaintiffs have failed to sufficiently detail their allegations to demonstrate conduct that shocks the conscience.  *See Eichenlaub*, 385 F.3d at 285–86.

First, Plaintiffs' allegations concerning anti-Semitism are speculative, conclusory, and otherwise deficient.   They should not be credited therefor.   *See Schuylkill Energy*, 113 F.3d at 417; *Papasan*, 478 U.S. at 286.  The Court cannot discern how the Fire District Defendants' issuance of an emergency notice evidences anti-Semitism on any Defendants' part simply because it occurred during Rosh Hashanah. The act is not self-explanatory, and Plaintiffs have failed to connect the dots.  For example, Plaintiffs do not allege that the Fire District Defendants were aware of the Jewish high holiday or that Mr. Malekan is observant or, simply, that the Fire District Defendants intentionally issued the Hazard Notice during Rosh Hashanah because of their anti-Semitism.  Additionally, the Fire District Defendants' conduct cannot fairly support a substantive due process claim targeted at the Township Defendants. Plaintiffs have failed to allege any specific facts that, when taken as true, could establish that Mayor Medany's (or any other Township Defendants') actions were fueled by anti-Semitism.[7]   Finally, Plaintiffs have not attempted to explain the connection between the Defendants and the swastika and other anti-Semitic images and statements that were found on the Property.  Thus, the appearance on Plaintiffs'

---

[7] On this point, the Court takes the opportunity to observe that Plaintiffs have failed to allege *any* facts in support of the claims asserted against Dina L. Zawadski, Christian Romano, Linda Tramo, and Tom Newman, Sr.  These individuals are mentioned in the Amended Complaint, but their roles in this litigation are left unclear.

Property of a swastika taped to a traffic cone—though incredibly shocking—does not demonstrate "bias against an ethnic group" or another circumstance evidencing egregious official misconduct *by these Defendants*. *See Eichenlaub*, 385 F.3d at 285–86. Critically, there is no allegation that any Defendant is responsible for placing the anti-Semitic image at the Property. Therefore, because these allegations are speculative, conclusory, and otherwise deficient, they fail to establish a substantive due process claim. *See id*.

Second, Plaintiffs have also failed to explain how the Fire District Defendants were acting wrongfully when they directed Plaintiffs' tenants to vacate the Property by 9:00 a.m. on September 28, 2022 or face arrest. Based upon the allegations set forth in the Amended Complaint and the attachments thereto, the Fire District Defendants appear to have been acting pursuant to their authority to enforce the fire code. To the extent they acted contrary to the directives of the Construction Board of Appeals for the County of Gloucester, [see Am. Compl. ¶ 87], or tortiously by sharing false information about Plaintiffs, [*id.* ¶¶ 88–90], such conduct, without more, does not "shock the conscience." *See Eichenlaub*, 385 F.3d at 286 (explaining that "unannounced and unnecessary inspection and enforcement actions," among other actions, failed to demonstrate conduct that shocked the conscience in a zoning dispute); *Shamrock Creek*, 2014 WL 4824353, at *5 (dismissing substantive due process claim where based on speculative allegations of defamation by municipal officials); *see also Highway Materials*, 386 F. App'x at 258 (explaining that a bad-faith violation of state law does not "shock the conscience"). Furthermore, without greater factual

detail, the allegedly suspect timing of the Fire District Defendants' actions fail to establish that they were somehow motivated by bias.  *See Skiles*, 449 F. App'x at 158 (explaining that use of slur for gay person by city plumbing inspector, even if true, fell "woefully short of demonstrating" that city defendants' treatment of landowner shocks the conscience).

Ultimately, Plaintiffs' substantive due process claim is not supported by sufficient facts to avoid dismissal pursuant to Rule 12(b)(6).  Therefore, the Court will grant the pending Motions, *see Evancho*, 423 F.3d at 351, and dismiss this claim without prejudice.

### 3.    Procedural Due Process Claim.

Next, the Court addresses whether the Amended Complaint states a violation of Plaintiffs' procedural due process rights.  The Fourteenth Amendment of the Constitution forbids a state from depriving a person of life, liberty, or property without due process of law.  U.S. CONST. amend XIV, § 1.  When government conduct is alleged to violate this provision, courts employ a "familiar two-stage analysis."  *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984).  They ask: (1) "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, and property' "; and (2) whether the procedures available to the plaintiff constituted " 'due process of law.' "  *Id.* (first citing *Board of Regents v. Roth*, 408 U.S. 564, 569–72 (1972); then citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  *See also Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 194–95 (3d Cir. 2009) (providing overview of procedural due process claims).

28

From its review of the Amended Complaint, the Court cannot discern the basis
for Plaintiff's procedural due process claim. The allegations that refer to the claim lack
any reasonable degree of detail or clarity, [*see* Am. Compl. ¶¶ 104–108[8]], and Plaintiffs'
Opposition Briefs fail to specify the factual allegations that support their claim, [*see*
Pls.' Opp'n to Twp. Defs.' Mot. 32–33; Pls.' Opp'n to Fire District Defs.' Mot. 36[9]].
Because of this fundamental deficiency, the Court cannot determine the conduct of the
Township Defendants or the Fire District Defendants that assertedly amounts to a
procedural due process violation.   As a result, the Court cannot analyze whether
Plaintiffs have raised an interest protected by the Due Process Clause and whether the
procedure available provided Plaintiffs with due process of law.  *See Robb*, 733 F.2d at

---

[8] The Court has questioned why Plaintiffs have not set forth their federal
constitutional claims in separately numerated causes of action, with specific factual
recitals to support each claim.  Because Plaintiffs have not done so, the pleading is
exceptionally hard to follow.

[9] Rather, Plaintiffs gloss over the facts with quasi-legal argument.  For instance,
Plaintiffs seem to imply that the Deptford Combined Zoning and Planning Board of
Adjustments was not an adequate and available procedure in which to challenge the
denial of Buy-Rite's use permit application because it is a "haven for hate of these
Plaintiffs."  [Pls.' Opp'n to Twp. Defs.' Mot. 32.]  They also complain of Mayor
Medany's indication that the Township would not approve any of Plaintiffs'
prospective tenants until the Property is "cleaned up."  [*Id.* at 32–33.]  Finally, they
assert that the Fire District Defendants "constructively evict[ed]" the tenants at the
Property.  [Pls.' Opp'n to Fire District Defs.' Mot. 36.]  To the extent Plaintiffs'
procedural due process claim is premised on any of these statements, Plaintiffs must
explain, in detail, (a) what due process interest of theirs was implicated by (b)
specifically identified conduct of each Defendant, and (c) why the zoning and
construction boards were not appropriate fora in which to pursue their complaints on
appeal.  *See Robb*, 733 F.2d at 292 (presenting the elements required for a plausible
procedural due process claim).

292. Therefore, the Court must grant the pending Motions and dismiss this purported claim without prejudice.  *See Evancho*, 423 F.3d at 351.[10]

### 4.    Equal Protection Claim.

The Court next addresses whether the Amended Complaint states a violation of the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  This command "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, laws that distinguish between persons based on "suspect classifications," such as race and national origin, or fundamental rights, such as the right to travel, marry, and vote, are subjected to "the most exacting scrutiny."  *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (collecting cases).  Intermediate scrutiny is applied to classifications based on sex or "illegitimacy."  *Id.*  Otherwise, legislation will survive constitutional scrutiny if it is rationally related to a legitimate governmental interest.  *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also Tolchin v. Supreme Ct. of New Jersey*, 111 F.3d 1099, 1113 (3d Cir. 1997) ("as a general

---

[10] Because the Court cannot analyze Plaintiffs' purported procedural due process claim given the lack of factual detail set forth in the Amended Complaint, the Court declines to consider the Township Defendants' argument that Plaintiffs' claim must be dismissed due to Plaintiffs' failure to appeal the denial of Buy-Rite's use permit application before the Deptford Combined Zoning and Planning Board of Adjustments.  [Twp. Defs.' Br. 33–34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).]  Considering this argument now would be premature.

matter, economic and social legislation is subject to rational basis review.") (citation and internal quotation marks omitted).

To state a claim under the Equal Protection Clause, a plaintiff must allege either that the government intentionally discriminated against him because of his membership in a protected class, *Chambers*, 587 F.3d at 196 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)), or, if the plaintiff is not a member of a protected class, that he has been intentionally treated differently from other similarly situated persons without a rational basis—a so-called "class-of-one claim," *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (per curiam) (explaining that property owner could state claim under Equal Protection Clause, even though she was not a member of an identifiable class, where village arbitrarily required her to grant a 33-foot easement to connect to the municipal water supply but all other property owners only a 15-foot easement).  Still, in the land-use context, the Third Circuit has cautioned courts: "we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation." *Eichenlaub*, 385 F.3d at 287.

Here, as far as the Court can discern, Plaintiffs are asserting an Equal Protection Clause claim under both theories.  [See Am. Compl. ¶¶ 104–108; Pls.' Opp'n to Twp. Defs.' Mot. 35–38; Pls.' Opp'n to Fire District Defs.' Mot. 36–42.]  In support of their protected-class theory, Plaintiffs contend that Defendants purposely discriminated against Mr. Malekan and his companies because of Defendants' anti-Semitism. Plaintiffs allege that Mr. Malekan is a Jew of Iranian descent, [Am. Compl. ¶¶ 2, 5],

and explain that Plaintiffs have experienced a "history of repeated denial" of their "ability to use the land for what it was intended," [Pls.' Opp'n to Twp. Defs.' Mot. 35; *see also* Am. Compl. ¶ 77].   Because Defendants have failed to demonstrate that other non-Jewish merchants have not experienced the same type of vandalism or been served with the same imminent hazard notices, Plaintiffs believe Defendants' unequal and invidious treatment is self-evident.   [*See, e.g.*, Pls.' Opp'n to Twp. Defs.' Mot. 36 ("The Defendants did not show that all other retail merchant facilities had construction cones placed on the top of them with swastikas.").]

Not so.   At least as styled in the Amended Complaint, Plaintiffs' protected-class theory fails.   Again, it is by no means clear why the Fire District Defendants' issuance of the Hazard Notice during Rosh Hashanah establishes purposeful discrimination, see *supra* Section III.B.2., nor have Plaintiffs explained the connection to the Township Defendants.   Similarly, Plaintiffs do not tie the appearance of anti-Semitic statements and images at the Property to any of the Defendants, so these allegations remain entirely irrelevant to Plaintiffs' equal protection claim.   Plaintiffs also misunderstand their affirmative burden.   They must show that the Defendants treated them differently from similarly situated persons *because of* Mr. Malekan's religion and/or ethnicity.   *See Chambers*, 587 F.3d at 196.   If they can demonstrate this, then Defendants' conduct will be subjected to strict scrutiny, *see Clark*, 486 U.S. at 461, and Defendants must justify their actions accordingly.   Defendants are not required to come forward with evidence that other "retail merchant facilities" did not suffer the same vandalism.   Therefore, because there are no well-pleaded factual allegations to support their

assertion of anti-Semitism and purposeful discrimination, Plaintiffs' equal protection claim must be dismissed to the extent it is premised on a protected-class theory. *See Chambers*, 587 F.3d at 196; *Evancho*, 423 F.3d at 351.

In addition, Plaintiffs appear to be asserting an equal protection claim under a "class-of-one" theory.  In support of their claim, Plaintiffs allege that they have been treated differently from other property owners and merchants because of the Township's "vendetta" against Plaintiffs. [Am. Compl. ¶ 68.]  Specifically, they allege that the "arbitrary and capricious" denial of Buy-Rite's use permit application is evidence of this vendetta.  [*Id.*  ¶ 67.]  Plaintiffs also allege that their tenants' use permits and other zoning applications have been denied whereas other merchants' applications have been approved, such as a construction permit for a Joann Fabrics nearby.  [*Id.* ¶¶ 68, 69.]  That tenant's application was allegedly approved notwithstanding the "blight" that formed the basis for the denial of the applications of Plaintiffs' tenants.  [*Id.* ¶ 69.]  Plaintiffs also allege that they have been fined for ordinance violations when other commercial property owners in the area have not for similar violations. [*Id.* ¶ 70.]  In their Oppositions Briefs, Plaintiffs focus on the same alleged facts as in their protected-class claim (i.e., that Mr. Malekan is Jewish). [Pls.' Opp'n to Twp. Defs.' Mot. 37; Pls.' Opp'n to Fire District Defs.' Mot. 40–41.]

The foregoing allegations similarly fail to sustain a class-of-one equal protection claim.  Plaintiffs have not alleged, much less seriously argued, that Defendants treated them differently from others who are similarly situated, that Defendants did so intentionally, and that there was no rational basis for this treatment. *See Olech*, 528

U.S. at 564–65.  First, the Court is not supplied with sufficiently detailed allegations concerning the treatment of similarly situated persons.  Plaintiffs fail to describe the other commercial property owners who are claimed to be similarly situated, including the owner of the property that the Joann Fabrics is allegedly leasing, and Plaintiffs do not explain how they were treated differently.  They speculate, based on a "drive by of photographs," that other tenants have been issued permits unlike Plaintiffs' tenants. These deficient allegations are fatal.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (dismissing class-of-one claim where plaintiff failed to demonstrate the existence of similarly situated individuals who were treated differently by the defendant).

Second, Plaintiffs fail to set forth any facts to establish that Defendants' actions were "irrational and wholly arbitrary," that they lacked a legitimate basis for denying Plaintiffs' tenants' permit applications.  *See Olech*, 528 U.S. at 565–66 (BREYER, J., concurring) (explaining that well-pleaded allegations of "vindicative action," "illegitimate animus," or "ill will" will establish the "extra factor" necessary to separate a run-of-the mill faulty zoning decision from an Equal Protection Clause case); *Highway Materials*, 386 F. App'x at 259 (observing that the requirement to show "wholly arbitrary" conduct is a high burden that fails " 'when any reasonably conceivable state of facts [] could provide a rational basis for the classification' ") (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  Inexplicably, Plaintiffs argue that the Township lacked a legitimate basis to deny Buy-Rite's application because Plaintiffs have a much higher vacancy rate than average for commercial property in Deptford.

[Pls.' Opp'n to Twp. Defs.' Mot. 38–39.]   The Court cannot fathom why this demonstrates the Township's arbitrary conduct.   Because Plaintiffs have not alleged any facts that can sustain their equal protection claim under a class-of-one theory (or, as discussed, a protected-class theory), the Court must grant the Motions and dismiss this claim without prejudice.  *See Evancho*, 423 F.3d at 351.

### C.   State Law and Other Claims.

Having dismissed Plaintiffs' federal constitutional claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction over a state law claim where the court "has dismissed all claims over which it has original jurisdiction").[11]  As this litigation is in its preliminary stages, the Court determines that there are no circumstances warranting jurisdiction over Plaintiffs' state law claims at this time.  *See Bright v. Westmoreland Cnty.*, 443 F.3d 276, 286 (3d Cir. 2006) ("[W]hen the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

---

[11] For clarity, these claims include "malicious infliction of extreme mental anguish" (Count II), negligence (Count III), a violation of Plaintiffs' due process and substantive rights, and equal protection, under the constitution and laws of the State of New Jersey (Count VI), tortious interference with contract (Count VIII), and an "illegal eviction by third party" (Count IX).  [Am. Compl. ¶¶ 109–14, 119–27, 130–40.]

Additionally, because the Court cannot determine the legal basis for Plaintiffs'
purported claim for the "appointment of special master" to "control the wanton
reckless actions and fines imposed by the municipality against the Plaintiffs" (Count
V), [Am. Compl. ¶ 118], the Court will dismiss such claim with prejudice, *see In re
Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1435 (explaining that dismissal with
prejudice is appropriate when a claim cannot be remedied with additional facts, when
it lacks any legal basis).

## IV.   CONCLUSION

For the reasons expressed above, the Court will **GRANT** Defendants' Motions
and **DISMISS**, **WITHOUT PREJUDICE**, all claims asserted by Plaintiffs, except for
Count V, which the Court will **DISMISS**, **WITH PREJUDICE**.  An accompanying
Order shall issue separately on today's date.


**August 29, 2023**                              **s/Renée Marie Bumb**
Date                                             Renée Marie Bumb
                                                 Chief United States District Judge